2024 IL App (1st) 230522-U

No. 1-23-0522

Order filed July 10, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 16244 |
| | ) | |
| HUMBERTO MARTINEZ-MORENO, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for predatory criminal sexual assault is affirmed where the trial court's failure to give a pattern jury instruction on evaluating statements by witnesses under 13 years old was not plain error, and no error occurred in the court's admission of other-crimes evidence.

¶ 2    Following a jury trial, defendant Humberto Martinez-Moreno was convicted of three counts of predatory criminal sexual assault and sentenced to consecutive terms of natural life imprisonment. On appeal, defendant contends that the trial court denied him a fair trial when it

failed to instruct the jury how to evaluate the weight and credibility of statements by persons under 13 years old. He also contends that the trial court abused its discretion when it admitted into evidence proof of other crimes where one witness' other-crimes testimony became the focus of the trial and thus rendered the evidence more prejudicial than probative. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     Defendant was charged with multiple counts of predatory criminal sexual assault of F.H.M. between October 5, 2010, and October 4, 2012, when F.H.M. was under 13 years old and defendant was at least 17 years old.

¶ 5                             A. Pretrial Proceedings

¶ 6     The State filed a pretrial motion to admit other-crimes evidence. See 725 ILCS 5/115-7.3 (West 2010) (admission of other-crimes evidence in trials for sex offenses for any relevant purpose, including propensity). The motion alleged that F.H.M. lived with defendant, her grandfather, for about a year between October 2010 and October 2012 when she was about six or seven years old. He repeatedly took her from her bedroom while her brothers were asleep and performed sexual acts including penetrating her anus with his penis causing pain and blood, forcing her to place his penis in her mouth, and placing his mouth on her vagina. Defendant told F.H.M. what sexual positions he wanted her to get into, and he told her that her stuffed animal was their son. Defendant threatened F.H.M., telling her not to tell anyone or she "would not see her mother again and he would do the same thing to [her] brother." He threatened her before she went back to Mexico, and by telephone when she was in Mexico.

¶ 7     The motion sought to introduce evidence that defendant sexually abused I.B. between May 2012 and May 2016 when she was between 10 and 13 years old and defendant was dating her

grandmother. Defendant lived in the same apartment complex as I.B. and her grandmother "so I.B. was frequently around the defendant." The motion alleged that defendant placed his mouth on I.B.'s vagina, penetrated her vagina with his penis, and touched her breast with his hand.

¶ 8 The motion alleged an incident involving both F.H.M. and I.B. when they entered defendant's apartment to get their dolls but he would not let them leave. He offered them money if they would massage him, and he showed them some money. He told F.H.M. to get undressed and she did, then he attempted to penetrate her anus. He grabbed I.B.'s wrist and would not let go, pulled up her skirt, moved her shorts, and touched her vagina with his hand. I.B. and F.H.M. each saw defendant abuse the other.

¶ 9 The motion also sought to introduce evidence that defendant sexually abused I.B.'s brother I.S. between July 2013 and April 2015 when I.S. was 3 to 4 years old.

¶ 10 Lastly, the motion sought to introduce evidence that defendant sexually abused M.C.M.G., his daughter and F.H.M.'s mother, when she was young. He would ask M.C.M.G. to touch and kiss his penis when her mother was gone, but she always said no. When M.C.M.G. was about 12 years old, she was in the shower when defendant came in, said he was going to scrub her body, and touched her vagina. He told her not to tell her mother.

¶ 11 The motion argued that this evidence was admissible because the other crimes were not overly remote in time and were significantly similar to the charged offenses. The State argued the crimes were similar because defendant abused young children to whom he had easy access and was in a position of trust or authority, performed many of the same sexual acts, used violence or force, and threatened and bribed the children to not report his actions. The motion sought to

introduce other-crimes evidence to show defendant's "identity, motive, intent, common scheme or design, *modus operandi*, lack of consent, and propensity."

¶ 12   Defendant filed a response to the State's motion to admit other-crimes evidence. He acknowledged that the alleged offenses against I.B. and I.S. were the subject of pending cases, 19 CR 16245 and 21 CR 11784, respectively. Defendant argued that the other-crimes evidence was more prejudicial than probative. The alleged offenses against M.C.M.G. were too remote in time and were not reported to law enforcement or charged. Moreover, the alleged crimes were not very similar. Lastly, he argued "admission of the other allegations will create several trials within the trial for the charged offense, which courts historically have discouraged."

¶ 13   At the hearing on the motion on other-crimes evidence, defendant argued based on his separate trial in one of the other cases that allowing other-crimes evidence created a trial within the trial, and that the court should exclude I.S.'s other-crimes testimony as in the other trial. The court granted the State's motion regarding I.B. and M.C.M.G., including using their testimony to show propensity, but denied the motion regarding I.S. as he was very young. The court found that the other-crimes testimony in the earlier trial "did not in any way create a trial within a trial" but was "handled very efficiently."

¶ 14   The State also filed a pretrial motion to admit out-of-court statements by a person under 13 years old complaining of sexual abuse pursuant to section 115-10 of the Code of Criminal Procedure (Code) (725 ILCS 5/115-10 (West 2010) (admission of statements by persons under 13 years old complaining of sexual offenses against them). The motion alleged that F.H.M was six to seven years old when defendant sexually assaulted her, and it sought to admit her statement to M.C.M.G. between October and December 2012. F.H.M. allegedly told M.C.M.G. that she had

something to tell her about two to three weeks after she arrived back to Mexico, then "stated that the defendant ***, her grandfather, had touched her," in particular that he "would touch my parts." The motion stated that F.H.M. would testify at trial.

¶ 15    Defendant filed a response to the State's motion under section 115-10 of the Code, arguing that admitting the proposed evidence would violate his constitutional right to confront witnesses against him. He also argued that there were insufficient indicia of reliability for the evidence at issue, as M.C.M.G. would also testify regarding other-crimes evidence "and thus her motive, interest and bias weighs in favor of excluding this testimony."

¶ 16    At the hearing on the State's section 115-10 motion, M.C.M.G. testified that F.H.M. lived with defendant, her grandfather, between 2010 and 2011 when F.H.M. was seven years old. F.H.M. returned to M.C.M.G.'s home in Mexico between October and December 2012, when she was eight years old. Two or three weeks after her return, F.H.M. told M.C.M.G. that she had something to tell her: that defendant touched her. On cross-examination, M.C.M.G. was asked what happened just before that statement; she replied that she and F.H.M. were cleaning the house. After F.H.M.'s statement, M.C.M.G. asked her where or how defendant touched her, and she indicated he touched her "vaginal parts." M.C.M.G. did not take her to a physician, and F.H.M.'s father reported the matter to the police. The court granted the State's motion, finding M.C.M.G. a "forthright" witness who gave a plausible account, and F.H.M. "was not coached" but "told a person that she would presumably be close to and trust," so that there were sufficient indicia of reliability.

¶ 17    The State proceeded to trial on three counts of predatory criminal sexual assault of a child.

¶ 18                    B. Testimony of F.H.M.

¶ 19    At the January 2023 trial, F.H.M. testified that she was born in 2004 and was 18 years old at the time of trial. She was living with her mother M.C.M.G. in Mexico, but she and her two brothers had lived with defendant, her grandfather, in Chicago for about a year when she was seven years old.

¶ 20    Once while she was living with defendant, F.H.M. and her friend I.B. had left their dolls in his apartment and went back to get them. Defendant told them to go to his bedroom and give him a massage. I.B. "got on top of him," defendant told F.H.M. to undress, and she complied. I.B. was still "on top of him" when I.B.'s grandmother, Lidia, entered.

¶ 21    That incident was not the first time defendant told F.H.M. to take off her clothes. In prior instances, he took her at night to his bedroom where he removed her clothing and his. He then touched her, sucking her vagina, making her suck his penis, and trying "to stick his penis in [her] anus." The latter hurt her and caused bleeding, but when she objected, he told her to shut up. Defendant would tell her to take up various positions, including with her hands and knees on the bed or on her side. Defendant had also abused F.H.M. in the bathroom. She explained that on two occasions when she was showering, "he would touch [her] vagina and he would masturbate himself." He would also watch "adult movies" with her and masturbate. Defendant told F.H.M. that one of her stuffed animal toys "was our son."

¶ 22    F.H.M. eventually returned to Mexico. Before she left Chicago, defendant told her that she could not tell anyone or she "would not see [her] mother again and that he was gonna do the same thing to [her] brothers." He also called her while she was in Mexico and told her "you cannot tell

anybody what I have done to you." However, about a month after returning to Mexico, she told M.C.M.G. that defendant touched her.

¶ 23    F.H.M. identified a photograph as depicting herself in defendant's bedroom and accurately depicting a pose he had her assume. The trial court admitted the photograph into evidence over objection. The photograph is included in the record on appeal, and this court has viewed it. It depicts a clothed girl on a bed face-down, up on her elbows and knees with her buttocks raised higher than her upper torso. Her face is not visible due to her hair hanging down.

¶ 24    On cross-examination, F.H.M. testified she could not recall when the photograph was taken, who took it, or who was present when it was taken. F.H.M. was brought to Chicago by the sister of M.C.M.G.'s boyfriend Jesse P., who lived in Chicago. F.H.M. denied that Jesse stayed in her bedroom or any male friend of defendant stayed overnight in his apartment. Jesse took F.H.M. to school, and either Jesse or Lidia took her home from school.

¶ 25    On redirect examination, F.H.M. denied that anyone but defendant told her to assume positions on defendant's bed.

¶ 26                          C. Testimony of M.C.M.G.

¶ 27    M.C.M.G. testified that when she was 12 years old, defendant, her father, abused her in the bathroom of their home. While she was bathing, he entered the bathroom and told her that he was going to scrub her, noting that she "was getting developed." Though she told him not to, he scrubbed her with a sponge and then put his fingers in her vagina. She told him to stop and he did. However, defendant did the same thing another time. M.C.M.G. did not tell her mother what defendant was doing "because he told [her] that he was gonna find a way that she would not believe" M.C.M.G.

¶ 28    Years later, in 2011, M.C.M.G. sent her children including F.H.M. to live with defendant in Chicago pending her own arrival in Chicago. However, M.C.M.G. was unable to come to Chicago. M.C.M.G. kept in regular telephone contact with defendant, and he once told her that F.H.M. was constipated because she was bleeding anally. About two or three weeks after F.H.M. returned to Mexico from Chicago, when she was eight years old, she was home alone with M.C.M.G. when she said that defendant touched her.

¶ 29    On cross-examination, M.C.M.G. testified that defendant moved to Chicago when she was about 12 years old, and she both kept in contact with him and visited him afterwards. Jesse lived in defendant's apartment when F.H.M. and her brothers lived there. When F.H.M. told her what defendant did to her, M.C.M.G. did not report it to the police or take her to a physician; F.H.M.'s father reported it instead.

¶ 30                              D. Testimony of I.B.

¶ 31    I.B. testified that she was born in 2002 and was 20 years old at the time of trial. She was living with her brother, mother, and grandmother Lidia, and defendant was Lidia's ex-boyfriend who lived in the same apartment complex. When I.B. was younger, Lidia would take care of her as her mother worked, and defendant and his grandchildren including F.H.M. would be present. I.B. and F.H.M. became friends.

¶ 32    Once when I.B. was 10 years old and F.H.M. was 7 years old, I.B. had left her dolls at defendant's apartment so she and F.H.M. went to retrieve them. When they went into defendant's bedroom, he told them they "weren't going to leave" and closed and latched the door. He showed them some dollar bills and told them he would pay them if they massaged him. He turned off the lights and F.H.M. "ended up" lying on her back in the middle of the bed with defendant face-down,

while I.B. sat on a corner of the bed. At one point, F.H.M. threw the bedcovers over I.B. When I.B. uncovered her head, she saw defendant lower his pants and expose his penis. I.B. "just wanted to get out of there," so she grabbed her box of dolls and went towards the couch. However, defendant grabbed her wrist with one hand and touched her "in between [her] legs" in a circular motion with the other hand, pushing her clothing aside. I.B. tried to pull away from defendant and he eventually loosened his grip so she fell to the floor. I.B. was "scared" and saw defendant wrap F.H.M.'s legs around him while F.H.M. was no longer dressed. His penis "vanished" from I.B.'s view and F.H.M. cried.

¶ 33    That was the first time defendant touched I.B. but not the last. Once, I.B. went to defendant's apartment to play with his grandchildren, but they said defendant would not let them play together. I.B. went to defendant's room to ask him to let them play, but he said no. Suddenly, he grabbed I.B., pushed her onto his bed, and lay on top of her "put[ting] his weight on" her. He pulled her clothing down, put his mouth near her vagina, and licked. I.B. tried unsuccessfully to push him off, and then hit him. He moved aside, and she fled. During the incident, the door to defendant's bedroom was slightly ajar.

¶ 34    In another incident when I.B. was 11, she was watching a movie in defendant's bedroom, on his bed. Defendant entered the room, pushed her onto the bed, pinned her down with one arm, and lifted her skirt. He pulled down his shorts, exposing his penis, and pushed aside I.B.'s underwear. Feeling pain near her vagina as he was on top of her, she wriggled and pushed herself away from him as he got closer, and he pulled up his shorts and left. When she went to the washroom, she was bleeding from between her legs.

¶ 35 In another incident after F.H.M. returned to Mexico, when I.B. was 13, defendant was visiting Lidia overnight in her home. When Lidia went out for an errand, defendant came into the kitchen, grabbed I.B., and touched her breast under her shirt. She cursed at him and started walking away, but he followed so she fled for the bathroom where she could lock the door. I.B.'s brother was bathing, and I.B. grabbed a towel and wrapped it around him because defendant was shaking the bathroom door. When defendant unlocked the door, he stood in the doorway holding a knife, then walked toward her saying that he would hurt her family if she said anything. She threatened to throw a nearby glass bowl at him if he got closer, so he backed away and she ran for her bedroom and locked the door.

¶ 36 I.B. identified a photograph as one taken by defendant and depicting F.H.M. on defendant's bed. It is the same photograph referred to *supra* in ¶ 23.

¶ 37 On cross-examination, I.B. testified that a man who was one of defendant's friends lived in one of the three bedrooms in defendant's apartment, and I.B. was unsure whether Jesse lived there or merely watched F.H.M. and her brothers on occasion. Defendant's friends would drink in his apartment, and on occasion they would grab I.B. or F.H.M. by the waist.

¶ 38 On redirect examination, I.B. clarified that none of defendant's friends was present when defendant abused her.

¶ 39 The court denied defendant's motion for a directed verdict.

¶ 40                                     E. Testimony of Defendant

¶ 41 Defendant testified that there was only one bathroom in the home he shared with his wife and four daughters, including M.C.M.G. He entered the bathroom once when M.C.M.G. was there, to wash his hands and face and glance in the mirror before leaving for work, but denied touching

or making any comment to her. When M.C.M.G. was 12, defendant and his mother moved to Chicago. When defendant lived in the apartment in question, Lidia split her time between his apartment and hers, and Jesse lived in defendant's apartment as well as F.H.M. and her brothers. Jesse shared a bedroom with F.H.M. and her brothers. Lidia or Jesse took the children to and from school.

¶ 42 Defendant acknowledged that F.H.M. and I.B. came into his bedroom once when he was asleep, but he denied closing, blocking, or locking the bedroom door, grabbing I.B.'s wrist or otherwise touching I.B., telling F.H.M. to take off her clothes, or touching F.H.M. He denied ever putting his mouth on, or his penis into, I.B.'s vagina, and denied that any incident occurred in I.B.'s home where he touched or threatened her. He also denied that he ever took F.H.M. from her bedroom or had any sexual contact with her. When shown the photograph admitted in the State's case, defendant denied knowing who was in it, that he took it, or that it depicted his bedroom.

¶ 43 On cross-examination, defendant testified he was born in 1966. He acknowledged knowing M.C.M.G. was taking a shower in the bathroom when he entered it when she was 12. He also admitted that Lidia came into his bedroom to confront him about F.H.M. not wearing pants while F.H.M. and I.B. were still in his bedroom.

¶ 44 F. Jury Instructions & Deliberations

¶ 45 At the jury instruction conference, the parties agreed that Illinois Pattern Jury Instructions, Criminal, No. 1.02 (hereinafter IPI Criminal No. 1.02) would be given. IPI Criminal No. 1.02 provides:

"Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may

take into account his ability and opportunity to observe, [his age,] his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

Neither party requested Illinois Pattern Jury Instructions, Criminal, No. 11.66 (hereinafter IPI Criminal No. 11.66), which provides:

"You have before you evidence that ____ made [ (a statement) (statements) ] concerning [ (an) (the) ] offense[s] charged in this case. It is for you to determine [whether the statement[s] [ (was) (were) ] made, and, if so,] what weight should be given to the statement[s]. In making that determination, you should consider the age and maturity of ____, the nature of the statement[s], [and] the circumstances under which [ (a) (the) ] statement[s] [ (was) (were) ] made[, and ____]."

¶ 46    The instructions the court gave the jury included IPI Criminal No. 1.02 without the phrase "his or her age."

¶ 47    During deliberations, the jury asked for the source of the photograph, and for any testimony or affidavit by Lidia, Jesse, or defendant's friends who had been in his apartment. With the parties' agreement, the court instructed the jury that it had all the evidence and should continue deliberating. The jury found defendant guilty of all counts of predatory criminal sexual assault for touching his mouth to F.H.M.'s vagina, his penis to her anus, and his penis to her mouth.

¶ 48    In his posttrial motion, as amended, defendant challenged the sufficiency of the trial evidence, the granting of the State's section 115-10 motion, and the partial granting of the State's other-crimes motion. Counsel did not challenge the absence of IPI Criminal No. 11.66 from the jury instructions. Counsel rested on the written motion as amended, which the court denied.

¶ 49 Following a sentencing hearing, defendant was sentenced to three consecutive terms of natural life imprisonment. The court denied his motion to reconsider sentence, and this appeal timely followed.

¶ 50                                                    II. ANALYSIS

¶ 51 On appeal, defendant first contends that the trial court denied him a fair trial when, in violation of section 115-10 of the Code, it failed to instruct the jury how to evaluate the weight and credibility of statements by persons under 13 years old pursuant to IPI Criminal No. 11.66.

¶ 52 Section 115-10 of the Code authorizes the admission, in a prosecution for sexual acts against victims under 13 years old such as predatory criminal sexual assault as here, of hearsay statements by the victim complaining of or describing such acts. 725 ILCS 5/115-10(a), (b) (West 2010). Section 115-10 further provides that,

> "[i]f a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, *** the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." Id. § 115-10(c).

IPI Criminal No. 11.66 sets forth that instruction, and failure to give IPI Criminal No. 11.66 when a statement was admitted under section 115-10 is erroneous. *People v. Sargent*, 239 Ill. 2d 166, 188-90 (2010).

¶ 53 As a threshold matter, trial counsel neither requested IPI Criminal No. 11.66 nor challenged its absence in the posttrial motion. As defendant acknowledges, the issue is therefore forfeited and may be considered only under the plain error doctrine or as ineffective assistance of counsel.

*People v. Bush*, 2023 IL 128747, ¶¶ 70-71, 79. Under the plain error doctrine, clear and obvious errors not properly preserved for appeal are reviewed if either (1) the evidence was so closely balanced that the verdict may have resulted from the error and not the evidence, or (2) the error was so serious that it affected the fairness of the trial and challenged the integrity of the judicial process. *Id.* ¶ 71.

¶ 54    "No party may raise on appeal the failure to give an instruction unless the party shall have tendered it." Ill. S. Ct. R. 366(b)(2)(i) (eff. Feb. 1, 1994). That said, failure to give IPI Criminal No. 11.66 when a statement was admitted under section 115-10 is clear and obvious error. *Sargent*, 239 Ill. 2d at 188-90. Thus, even when a defendant fails to seek the inclusion of IPI Criminal No. 11.66 in the jury instructions and to challenge its absence in the posttrial motion, the absence of IPI Criminal No. 11.66 may be reviewed for plain error. *Id.*

¶ 55    However, "erroneous omission of a jury instruction rises to the level of plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *Id.* at 191. Thus, our supreme court held in *Sargent* that when a jury was not given IPI Criminal No. 11.66 but was given IPI Criminal No. 1.02 on witness credibility, there is no second-prong plain error because the court provided the jury "similar principles regarding the jury's role in assessing witness credibility and the various criteria jurors may consider when making that assessment." *Id.* at 192. Here, the court gave the jury IPI Criminal No. 1.02 and its failure to give IPI Criminal No. 11.66 was therefore not second-prong plain error.

¶ 56    Defendant attempts to distinguish *Sargent* on the basis that IPI Criminal No. 1.02 was given there with the phrase "his age" included while the instruction here did not include the phrase " his

or her age." However, the *Sargent* court rejected the proposition "that instructions similar to [IPI Criminal No. 1.02] may not be sufficient if they do not specifically reference 'the weight and credibility to be given the child's statement or *** the age and maturity of the child, the nature of the statement, or the circumstances under which the statement was made.' " *Sargent*, 239 Ill. 2d at 193 (distinguishing *People v. Mitchell,* 155 Ill. 2d 344 (1993), cited by defendant here).

¶ 57 While *Sargent* noted favorably that the instruction at issue in that case included age, it continued: "Moreover, the directive for the jury to take into account the nature of the statement, or the circumstances under which the statement was made, seems implicit in the instruction it did receive." *Id.* The supreme court in *Sargent* found no plain error because the jury was given "similar principles" (*id.* at 192) regarding assessing witness credibility, not identical principles. We consider IPI Criminal 1.02 without "his or her age" sufficiently similar to IPI Criminal 11.66 to preclude second-prong plain error. We therefore turn to examining the first prong of plain error.

¶ 58 To determine if trial evidence was closely balanced for the first prong of plain error, we evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of the evidence in context. *People v. Rowlands*, 2022 IL App (5th) 200221, ¶ 53. We assess the evidence regarding the elements of the charged offenses, along with any evidence regarding witness credibility. *Id.* Evidence may be closely balanced if the outcome of the case depends on a choice between two credible versions of facts, or if State and defense witnesses gave plausible opposing accounts with neither version corroborated by extrinsic evidence. *Id.* Conversely, evidence is not closely balanced if one party's account is implausible or corroborated by other evidence. *Id.* ¶ 54.

¶ 59 We find the trial evidence of defendant's guilt was not closely balanced. The testimony of F.H.M., I.B., and M.C.M.G. painted a vivid picture of defendant's actions toward F.H.M. and other

young girls in his care. Further, I.B.'s testimony corroborated F.H.M.'s account of the time defendant assaulted both girls in his bedroom.

¶ 60    While defendant denied abusing any of the witnesses, on cross-examination he corroborated F.H.M.'s testimony that Lidia interrupted the incident with her and I.B. Indeed, defendant admitted that Lidia confronted him about F.H.M.'s pants being off, which is consistent with F.H.M. and I.B.'s account that F.H.M. was undressed in defendant's bedroom. We therefore reject his argument that this case was closely balanced because it "boiled down to the credibility of FHM versus" defendant. It was not a duel between two plausible accounts as F.H.M.'s account was corroborated in part, including by defendant, and thus the evidence was not closely balanced.

¶ 61    Accordingly, we find no plain error on defendant's unpreserved claim under either prong.

¶ 62    Alternatively, defendant contends that trial counsel was ineffective for not seeking to include IPI Criminal No. 11.66 in the jury instructions. Counsel is ineffective when (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different if counsel had not erred. *Bush*, 2023 IL 128747, ¶ 79. Defendant's ineffective assistance of counsel claim fails. The jury was instructed under IPI Criminal No. 1.02 that it was the judge of the credibility and weight of witness testimony and given criteria for making that determination. As our supreme court found in *Sargent*, that instruction is similar to IPI Criminal No. 11.66 in providing jurors principles for weighing testimony. *Sargent*, 239 Ill. 2d at 192. Thus we do not see a reasonable probability that the outcome of the trial would have been different if counsel had requested, and the jury had been given, IPI Criminal No. 11.66 as well.

¶ 63    Defendant also contends that the trial court abused its discretion when it admitted into evidence proof of other crimes. He argues I.B.'s other-crimes testimony became the focus of the trial and thus rendered the other-crimes evidence more prejudicial than probative.

¶ 64    Where, as here, a defendant is charged with predatory criminal sexual assault of a child, section 115-7.3 of the Code authorizes the admission of evidence that defendant committed other sex offenses that "may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3(a), (b) (West 2010). In considering whether to admit such evidence, the court shall "weigh[] the probative value of the evidence against undue prejudice to the defendant," and may consider all "relevant facts and circumstances" including but not limited to "the proximity in time to the charged or predicate offense; [and] the degree of factual similarity to the charged or predicate offense." *Id.* § 115-7.3(c). "The admissibility of evidence at trial is a matter within the sound discretion of the trial court, and that court's decision may not be overturned on appeal absent a clear abuse of discretion." *People v. Ilgen*, 145 Ill. 2d 353, 364 (1991).

¶ 65    One of the considerations in determining whether other-crimes evidence is more prejudicial than probative is whether it will become the focus of the trial or otherwise be misleading or confusing to the jury. *People v. Watts*, 2022 IL App (4th) 210590, ¶ 52. The rationale for not permitting "mini-trials" of collateral offenses is to reduce the risk of unfair prejudice, jury confusion, or delay. *Id.* However, unlike common-law other-crimes evidence, section 115-7.3 permits the use of other-crimes evidence to show propensity, and the danger of unfair prejudice under section 115-7.3 is therefore significantly reduced. *Id.* ¶ 53. Thus, while common-law other-crimes evidence must be carefully limited to what is necessary to illuminate the issue for which it was introduced, the trial court is not required to do so on a section 115-7.3 motion. *Id.*

¶ 66    While there may be cases where the sheer volume of other-crimes evidence renders it unduly prejudicial, there is no rule that the instances of other crimes cannot outnumber the charged offenses. *Id.* ¶¶ 56-57. Propensity evidence constitutes an improper "mini-trial" only if it was so excessive as to cause jury confusion or unnecessary delay. *Id.* ¶ 57. The decision whether other-crimes evidence was more prejudicial than probative is reviewed for abuse of discretion. *Id.* ¶ 60.

¶ 67    Here, defendant contends that admitting the other-crimes testimony of I.B. and M.C.M.G. "was reversible error because the quantum of evidence the State presented at trial on the propensity accusations was significantly more than the evidence presented on the offense for which [defendant] was actually being tried, shifting the focus of trial to the collateral incidents." However, this court has expressly rejected the proposition " 'that anytime the evidence of other crimes outnumbers that of the charged incidents, the prejudicial effect renders the other-crimes evidence inadmissible.' " *Id.* ¶ 57 (quoting *People v. Perez*, 2012 IL App (2d) 100865, ¶ 49).

¶ 68    Defendant nevertheless cites *People v. Cardamone*, 381 Ill. App. 3d 462 (2008), to support his contention. However, the trial court there admitted testimony regarding at least 158 uncharged acts against 15 victims. *Id.* at 491-93. This court has found *Cardamone* to be an extreme and easily-distinguished case. *Watts*, 2022 IL App (4th) 210590, ¶ 59 ("three principal victims"); *People v. Arze*, 2016 IL App (1st) 131959, ¶¶ 98-100 ("only two victims other than" the one in the charges).

¶ 69    We do not find the other-crimes testimony of I.B. and M.C.M.G. to have been the undue focus of defendant's trial. As in *Arze*, the jury heard from only two victims other than F.H.M. Both witnesses directly corroborated F.H.M. as well as giving other-crimes testimony: I.B. was an eyewitness to defendant's abuse of F.H.M., and F.H.M. gave a statement to M.C.M.G. implicating defendant. The evidence at issue served the proper purpose, authorized in section 115-7.3, of

showing defendant's propensity to sexually abuse young girls like F.H.M. when they came into his presence in his home and no other adults were present.

¶ 70    Defendant argues that it was "most egregious and prejudicial" to admit I.B.'s testimony to the incident in her home when she was 13 because "FHM had already left the country." However, we consider that incident not unduly temporally distant from the other direct and other-crimes incidents merely because it occurred after F.H.M. left Chicago and defendant's control. Moreover, we find the incident consistent with the other evidence and not more prejudicial than probative. Like the other incidents described by F.H.M., I.B. and M.C.M.G., defendant abused I.B., a young girl, when finding himself in a home with her and no adult but himself. As F.H.M. described defendant doing before her return to Mexico, defendant threatened I.B.'s family if she spoke out. Again, evidence that defendant had a propensity to sexually abuse girls and then threaten them to cover up the abuse is not improper under section 115-7.3.

¶ 71    In sum, we do not find that the other-crimes testimony of I.B. and M.C.M.G. to show propensity was more prejudicial than probative. Thus, we find that the trial court did not abuse its discretion in admitting that testimony. Because we do not find an error by the trial court, we need not address defendant's argument that the court's error was not harmless.

¶ 72    Accordingly, the judgment of the circuit court is affirmed.

¶ 73    Affirmed.