2024 IL App (1st) 231006-U

No. 1-23-1006

Order filed October 9, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 16245 |
| | ) | |
| HUMBERTO MARTINEZ-MORENO, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court did not abuse its discretion when it granted the State an extension of the speedy-trial term so the State could obtain two material witnesses living in a foreign nation who did not have passports.

¶ 2    Following a jury trial, defendant Humberto Martinez-Moreno was convicted of predatory criminal sexual assault, aggravated criminal sexual assault, and aggravated criminal sexual abuse and sentenced to a total of 30 years in prison. On appeal, defendant contends that the trial court abused its discretion in granting the State a month's extension of the speedy trial term when the

State failed to demonstrate that the delay was necessary to obtain evidence material to the case. We affirm.

¶ 3    Defendant was arrested on October 28, 2019, and charged with multiple sexual offenses allegedly committed against I.B. when I.B. was under 13 years old.

¶ 4    Defendant demanded trial from the time of his arrest until his arraignment on December 5, 2019, when he was appointed counsel. All continuances from that day until October 3, 2022, were by agreement.

¶ 5    In January 2022, the trial court granted the State's pretrial motion to admit other-crimes evidence. The court allowed the State to introduce propensity evidence that defendant abused his granddaughter F.H.M. when she was about 12 years old, abused his daughter and F.H.M.'s mother M.C.M.G. when she was young, and in one incident abused both I.B. and F.H.M.[1]

¶ 6    In June 2022, the court scheduled a jury trial for October 3, 2022, after the State requested a longer date because "two of the proof of other crimes witnesses live in Mexico."

¶ 7    At a status hearing on September 26, 2022, the State told the court it would not be ready for trial because F.H.M. and M.C.M.G. were in Mexico and did not have passports, which would take "approximately six months to get from the Mexican government," followed by "a bunch of paperwork that has to be done, of course, through the Federal Government in regards to where they will be staying, who will be watching over them while they are here." The court asked if there was an expedited process for witnesses in felony cases. The State asked for a discussion off the record, and the court did so. It then removed the case from the jury call and changed October 3,

---

[1] In a separate case, No. 19 CR 16244, defendant was convicted of multiple sex offenses committed against F.H.M. We affirmed on appeal. *People v. Martinez-Moreno*, 2024 IL App (1st) 230522-U.

2022 to a status date. Trial counsel told the court that she would file a demand for trial on October 3 "given that the case is three years old."

¶ 8     On October 3, 2022, the court noted that "the parties had informed me ahead of time that the State would not be ready for jury but we kept this date for today." Defendant filed a written demand for trial. The State told the court that the last day of the speedy trial term would be December 22, 2022 and requested an extension of the term to avoid commencing jury selection during the holiday season, when fewer jurors would be summoned.[2] The court stated it would be on vacation during the holiday period, and a different judge would have to preside over the trial if the case was set for trial during that period.

¶ 9     Noting that the case had been continued by agreement each date since 2019, the court remarked that it understood why defendant was demanding trial but was also "well-aware" of the State's efforts to get its witnesses from Mexico to Chicago. It stated the State was working with the governments of Mexico and the U.S. as the witnesses did not have passports. "There are arrangements that need to be made. Some of these arrangements were not foreseen until very recently. Some of these issues just arose and so, therefore, I will be granting the State that extension." The court continued the case to December 19, 2022 for status and scheduled trial for January 2, 2023.

¶ 10     On October 11, 2022, the State reminded the court that January 2, 2023 was a court holiday and asked the court to move the case to January 3, 2023. The court granted an extension to January

---

[2] The State's calculation was incorrect. The parties agree the last day of the speedy trial period was December 27, 2022.

3, 2023, as the original extension to January 2 "would not be a meaningful extension if it was a day in which court was not in session."

¶ 11    On December 19, 2022, trial counsel told the court that the lead prosecutor on the case was unavailable for the "entire month" as she had a death in her family, and the State was making an "informal request" to extend the speedy trial term to January 23, 2023 for trial. The court extended the term "a very short amount of time" to January 23, 2023 "due to a death in the family," as it was "neither realistic nor humane" to ask the lead prosecutor to try a case during her grief over losing "her primary caregiver throughout her childhood." It noted defendant's continued demand for trial.

¶ 12    Defendant filed a written trial demand on January 3, 2023, when the court heard motions *in limine* and continued the case to January 20 to discuss logistics of a jury trial.

¶ 13    On January 20, 2023, defendant demanded trial and the court continued the case for jury selection on January 23.

¶ 14    On January 23, 2023, before a jury was selected, defendant filed a motion to dismiss the case based on a speedy trial violation, which the court denied on its finding that it continued the case due to "exigent circumstances for a short date."

¶ 15    As defendant challenges neither the sufficiency of the evidence establishing his guilt nor his sentence, we summarize the trial evidence. At trial, I.B. testified that she lived with her brother and grandmother Lidia. Defendant was Lidia's ex-boyfriend who lived in the same apartment complex, and I.B. and F.H.M. were friends. I.B. described an incident when she was 10 years old and F.H.M. was 7 years old in which defendant sexually abused them both. I.B. also described defendant's sexual assaults when she was 11, and again when she was between 11 and 13. She

described an incident when she was 13 during which defendant sexually abused her and threatened her and her brother with a knife.

¶ 16    F.H.M. testified that, when she was seven years old, she and her brothers lived with defendant in Chicago for about a year. She described the incident where defendant abused her and I.B., and other instances when defendant sexually assaulted her. M.C.M.G. testified that, when she was 12 years old, defendant sexually abused her in the bathroom of their home.

¶ 17    Defendant testified, denying he committed the sexual acts alleged by the State's witnesses.

¶ 18    The jury found defendant guilty of predatory criminal sexual assault, aggravated criminal sexual assault, and aggravated criminal sexual abuse.

¶ 19    In his amended posttrial motion, defendant challenged the sufficiency of the trial evidence, the extensions of the speedy trial term, and the denial of his motion to dismiss. Counsel rested on the written motion as amended, except to note that the primary issue was the court's extensions of the speedy trial term and the denial of the motion to dismiss for speedy trial violations. The court denied the motion, finding that it granted "very, very brief" extensions for what it "considered very pressing extenuating circumstances *** that the State was working very diligently," including "a few things outside of the State's control."

¶ 20    Following a sentencing hearing, the trial court sentenced defendant to three 15-year prison terms, with the sentences for predatory criminal sexual assault and aggravated criminal sexual assault to be served consecutively and the sentence for aggravated criminal sexual abuse to be served concurrently. This appeal timely followed.

¶ 21    On appeal, defendant contends that the trial court abused its discretion in extending the speedy trial term for a month at the State's behest when the State failed to demonstrate that the

delay was necessary to obtain evidence material to the case. Defendant notes that, although the State's September 26, 2022 proffered reason that it could not answer ready for trial was that it needed time to secure witnesses, the only grounds it subsequently cited for extending the speedy trial term from December 2022 to January 2023 was to avoid having to call a jury during the Christmas period. The State responds that the court did not abuse its discretion because the delay was necessary to allow the State to secure the presence for trial of F.H.M. and M.C.M.G., material witnesses living in a foreign nation who did not have passports. Defendant replies that the State was not diligent in securing the witnesses and securing the witnesses was not the reason for the extensions.

¶ 22     The speedy trial statute (725 ILCS 5/103-5 (West 2020)) provides that a criminal defendant in custody "shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant," an interlocutory appeal, or matters concerning a defendant's mental or physical fitness to stand trial. *Id.* § 103-5(a). "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." *Id.* "If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of the State for not more than an additional 60 days." *Id.* § 103-5(c). A defendant "not tried in accordance with" the above provisions "shall be discharged from custody." *Id.* § 103-5(d).

¶ 23     Section 103-5(c) requires due diligence in obtaining evidence within the 120-day speedy trial term, not diligence in obtaining evidence before a scheduled trial date. *People v. Williams*,

2023 IL App (1st) 192463, ¶ 86. The test of due diligence is whether the State began efforts to locate its witness in sufficient time to secure his or her presence before the speedy trial term expired. *Id.* ¶ 83. Whether the State exercised due diligence is determined on a case-by-case basis after a careful review of the circumstances. *Id.* The State bears the burden of showing due diligence. *Id.* A ruling on due diligence will not be overturned absent a clear abuse of discretion, which exists only where the ruling was arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the trial court. *Id.*

¶ 24    Here, we find no abuse of discretion in the court extending the speedy trial term for about a month. The parties agree the speedy trial term was to expire on December 27, 2022. The State brought the passport issue to the court's attention on September 26, 2022, three months before the expiration of the speedy trial term. The court discussed the matter off the record before striking the October 3, 2022 trial date and setting that date for a status hearing. On October 3, the court set December 19, 2022 for a status hearing and January 2, 2023 as the trial date. Although it acknowledged that the December speedy trial date fell within the holiday period, it based its extension of the speedy trial term on the passport issue. Subsequently, the court changed the trial date to January 3, 2023 to remedy the impossibility of holding trial on January 2, 2023, which was a court holiday. On December 19, 2022, the court extended the trial date to January 23, 2023, due to the unavailability of the lead prosecutor due to a death in her family. We will not find, under these circumstances, that the court abused its discretion, or that the State failed to prove that its efforts to secure its witnesses began in sufficient time to secure their presence before the speedy trial term expired in December 2022. See *Williams*, 2023 IL App (1st) 192463, ¶ 83.

¶ 25    Defendant cites *People v. Battles*, 311 Ill. App. 3d 991 (5th Dist. 2000), for its holding that, to meet its burden of showing due diligence,

>   "the State should tender a full explanation of each and every step taken to complete DNA testing within the 120-day speedy trial term. The steps articulated should comprise a course of action that a reasonable and prudent person intent upon completing tests within 120 days would follow. Further, the showing should explain why the efforts engaged in fell short of their objective and resulted in an unavoidable need for delay." *Id.* at 998.

However, we have distinguished *Battles*. See *Williams*, 2023 IL App (1st) 192463, ¶¶ 90-91.

¶ 26    First and foremost, *Battles* concerned DNA test results, which are governed by a different extension provision in the speedy trial statute. See 725 ILCS 5/103-5(c) (West 2020) ("If the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days."). The *Battles* and *Williams* courts both concluded that cases decided under one extension provision were not "particularly helpful" in cases under the other extension provision. *Williams*, 2023 IL App (1st) 192463, ¶¶ 90-91; *Battles*, 311 Ill. App. 3d at 997.

¶ 27    Second, even in applying the DNA extension provision, other panels of this court have declined to apply the strict test from *Battles*, agreeing with the *Battles* court that diligence is determined on a case-by-case basis but noting that the *Battles* test has no foundation in the statutory language. *People v. Spears*, 395 Ill. App. 3d 889, 895 (2d Dist. 2009); *People v. Colson*, 339 Ill. App. 3d 1039, 1047-48 (4th Dist. 2003).

¶ 28    Lastly, the lack of diligence in *Battles* was particularly egregious. There, the State did not decide to conduct DNA testing until day 103 of the 120-day speedy trial term and did not try to conduct testing within the brief remaining time. *Williams*, 2023 IL App (1st) 192463, ¶ 90. Here, in contrast, the State informed the court regarding its problem securing the witnesses from Mexico with about 90 days remaining of the 120-day speedy trial term.

¶ 29    Defendant argues that the State did not establish *on the record* all its steps in diligently securing the witnesses' attendance. However, we see no basis in section 103-5(c) for applying *Battles*' strict test for proving due diligence entirely on the record. Here, the State gave a statutorily compliant and facially plausible reason for an extension, and there was then a discussion off the record before the court granted an extension. Therefore, we will presume, absent an indication on the record to the contrary that the State established its diligence in the passport matter to the trial court's satisfaction. See *People v. Jordan*, 218 Ill. 2d 255, 269 (2006) (we presume the trial court knew and followed the law unless the record rebuts that presumption).

¶ 30    Defendant points to the discussion of other matters – jury selection during the holiday season, the presiding judge's vacation, and the lead prosecutor's loss in her family – and argues that the extensions were granted for those reasons rather than for the securing of evidence as authorized by section 103-5(c). However, we see a key distinction between granting an extension of the speedy trial term, which must be done on the grounds authorized by the speedy trial statute, and routine scheduling when that extension ends within the statutory 60-day limit. In other words, defendant does not cite, and we are unaware of, any case stating that once diligence for an authorized extension is shown, the court and parties cannot consider the usual logistical matters in scheduling exactly when the extension ends and trial will be held.

¶ 31    Here, the court extended the speedy trial term to January 2, 2023 for trial. It then extended it to January 3 on the basis that January 2 was a court holiday, and then extended it to January 23, 2023, due to a death in the lead prosecutor's family. We find that the court extended the speedy trial term on valid grounds of securing evidence pursuant to section 103-5(c), then considered other routine matters in pinpointing the exact date when the extension would end. The date it set for the extension to end and trial to begin was well within the statutory 60 days permitted for an extension.

¶ 32    In sum, we find that the trial court did not abuse its discretion under section 103-5(c).

¶ 33    Accordingly, the judgment of the circuit court is affirmed.

¶ 34    Affirmed.